Lynn S. Walsh, OSB #924955
email: walsh@europa.com
610 SW Alder St., #415
Portland, Oregon 97205
Telephone: 503-790-2772

      Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| CARL SPIELER,<br><br>        Plaintiff,<br><br>   v.<br><br>REED PAULSON, MD; KAREN HARRIS, DO; ELIZABETH MILLS, NP; CORRECTIONAL HEALTH PARTNERS, LLC, SALEM HEALTH HOSPITALS AND CLINICS dba SALEM HOSPITAL; and THE STATE OF OREGON<br><br>        Defendants. | NO.  6:20-cv-01055-SI<br><br>FIRST AMENDED COMPLAINT<br>Civil Rights Action (42 U.S.C. § 1983; negligence)<br><br>DEMAND FOR JURY TRIAL |

This lawsuit concerns the Oregon Department of Corrections defendants' cruel and deliberate indifference towards plaintiff in that they failed to appropriately treat his ulcerative colitis, causing plaintiff at least several months of uncontrollable bloody diarrhea which resulted in bowel incontinence, severe malnutrition, anemia, a weight loss of about 60lbs., a gangrenous colon, septic shock and near death.  These actions combined with the deliberately indifferent

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

policies, procedures and practices of Correctional Health Partners, LLC and Salem Hospital, and the subsequent negligence by Salem Hospital medical providers, resulted in the removal of Mr. Spieler's colon and an unnecessarily prolonged rehabilitation period.  He now requires the use of a colostomy bag to catch his waste for the rest of his life.

## JURISDICTION

1.      This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C. §§1983 and 12101 et seq., 29 USC §794, and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). Pendent jurisdiction is asserted for separate state law claims under 28 U.S.C. § 1367.

## VENUE

2.       Venue is proper within the District of Oregon because all of the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district.  28 U.S.C. § 1391(b).

## PARTIES

3.       Plaintiff Carl Spieler is an adult in custody of the Oregon Department of Corrections (ODOC).  During all relevant times, Mr. Spieler was incarcerated at Oregon State Penitentiary (OSP) in Salem, Marion County, Oregon.

4.      Defendant Reed Paulson, MD is a medical doctor and Chief Medical Officer at Oregon State Penitentiary (OSP) and an employee of ODOC.  He is sued in his individual capacity.  At all times relevant, he was acting under color of state law.  At all relevant times he was Mr. Spieler's primary care practitioner.

5.      Karen Harris, DO is a medical doctor at OSP and an employee of ODOC.  She is sued in her individual capacity.  At all times relevant, she was acting under color of state law.

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

6.      Elizabeth Mills, NP is a nurse practitioner at OSP and an employee of ODOC.  She is sued in her individual capacity.  At all times relevant, she was acting under color of state law.

7.      Correctional Health Partners, LLC (CHP) is a limited liability company incorporated in the state of Colorado, and registered to do business in Oregon.  CHP has contracted with ODOC to provide third party administration of off-site medical care for ODOC inmates.  The contract requires CHP to establish a "Provider Network," and contract with "Network Providers" to provide medical care for its prisoners at rates with "aggressive discounts for healthcare services" provided to prisoners.  As such, it is an agent of ODOC and is acting under color of state law.

8.      Salem Hospital is an assumed business name for Salem Health Hospitals & Clinics.  It is an Oregon non-profit licensed to do business at 890 Oak Street SE, Salem, Marion County, Oregon.  Upon information and belief, Salem Hospital is a "Network Provider" for CHP and has contracted with CHP to provide medical care for ODOC prisoners.  As such, it is an agent of ODOC and is acting under color of state law.

9.      Defendant State of Oregon operates the Oregon Department of Corrections ("ODOC") facilities.  At all times relevant, the State of Oregon was obligated to provide medical care consistent with the community standard of care.

## FACTUAL ALLEGATIONS

10.      Sometime in June of 2018, Mr. Spieler began experiencing intestinal issues, including stomach pains, cramps, diarrhea, and bloody stools.

11.      Shortly after he began experiencing symptoms, his weight was at 175 lbs., and he had normal blood pressure at 128/79.  Mr. Spieler is six feet and three inches tall.

12.      On June 14, 2018, defendant Nurse Practitioner Elizabeth Mills prescribed antibiotics for

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.net

ten days.  NP Mills has horrible writing rendering most of her chart notes unreadable.  Her

scribbled "mark" (signature) has the appearance of not wanting to be identified by possible

plaintiffs.  In any event, it appears she had concerns that Mr. Spieler was suffering from

diverticulitis.  Her "Physician's Orders" are likewise difficult to read, but it looks like she

ordered a stool culture and then crossed it out.  She also appears to have ordered a blood panel.

13.     On June 18, 2018,  Mr. Spieler had a blood draw which revealed low lymphocytes which

can be a sign of several conditions, including malnutrition and gastrointestinal issues such as

ulcerative colitis.  He also had a high neutrophils, high eosinophils, and a high eos absolute value

which can all be a sign of infection or non-infectious inflammation.  His other relevant lab tests

were normal, including his albumin level (a sign of malnutrition).   The results of this blood test

were noted by NP Mills.

14.     On July 5, 2018, he was seen by NP Mills again.  NP Mills' notes are completely

impossible to read, but it looks like Mr. Speiler reported a continuation of cramps, diarrhea and

bloody stools.  At this time, Mr. Spieler's weight was 178, and his blood pressure was 125/87,

which are both essentially unchanged since his last vital signs were taken.  NP Mills ordered labs

to look for H Pylori, parasites, and c diff, and ordered a low residue diet.  It also looks like NP

Mills may have referred this case to the TLC Committee for further workup.

15.     The labs for H Pylori, c diff, and parasites all came back negative.  NP Mills did not

order labs for any other type of bacterial infection such as staphylococcus aureus.

16.     It appears that NP Mills forwarded Mr. Spieler's case to the TLC committee on July 5,

2018 for approval of a colonoscopy.  In her TLC form, she described Mr. Spieler's condition as

hematochezia, which is the passage of fresh blood through the anus, usually in or with stools.

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

17.      TLC stands for "Therapeutic Level of Care."  The TLC committee consists of doctors who decide if they will approve or deny medical care to their patient based upon arbitrary factors.

18.      On July 6, 2018, Mr. Spieler sent a kyte to the "Chronic Care Provider" stating he still has "all kinds of blood" in his stool, and that he was worried and scared and trying to get help with his problem.

19.      On July 12, 2018, the TLC Committee approved a colonoscopy for Mr. Spieler.

20.      When a patient gets referred to an outside provider for a procedure, the provider fills out a pink referral sheet.  Even though the TLC Committee approved the colonoscopy, there is no pink referral sheet for the colonoscopy in the file.

21.      On July 13, 2018, a nurse called a provider for orders due to Mr. Spieler's dehydration and inability to keep anything down.  The nurse also noted that he had blood in his stool and urine, that his urine tested positive for ketones, that he had tachycardia, and that he was dehydrated.   Dr. Paulson ordered him admitted to the infirmary for observation.

22.      Dr. Paulson ordered more bloodwork which was done on July 16, 2018.  The metabolic panel revealed a number of things wrong including low electrolyte levels, low albumin (2.9), and low protein (6.0) which are all indicative of malnutrition.  Likewise his CBC panel revealed he was suffering from infection or inflammation, and perhaps anemia.

23.      On July 16, 2018, Dr. Paulson ordered an abdominal CT scan which was scheduled for July 20, 2018.    The pink referral form also notes that Mr. Spieler's weight is now down to 168 lbs.

24.      Mr. Spieler saw Dr. Paulson on July 17, 2018.  He indicates he reviewed the labs from

Page 5          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

July 16, 2018, and notes that his WBC increased to 13.1.

25.    On July 18, 2018, Dr. Paulson ordered a full liquid diet for one month, and Ensure (a nutritional drink for maintaining weight) twice a day for one month.  Mr. Spieler's weight dropped to 164 lbs.

26.    On July 19, 2018, a nurse (whose writing is quite readable) notes that he has a slight fever, an elevated pulse at 116, and SaO2 of only 93% (normal for a healthy adult is 94% to 100%).  He was unable to keep down food, had not had a solid stool for two months, and had constant pain in his left lower quadrant.  She noted that he was tachycardic and at risk for dehydration.  She called for orders, and the on call Nurse Practitioner Heidi Miller ordered one liter of normal saline fluid.  Unfortunately, the nurses could not find a vein to start the IV fluids.

27.    Mr. Spieler saw Dr. Harris on July 20, 2018.  She noted that he continued to have orange/red liquid stools, persistent lower quadrant pain, and could not tolerate Ensure.  She ordered more IV fluid, and stated that his feet or ankle may be used for venous access if necessary.  She also ordered labs.  Fortunately, a nurse was finally able to get the IV started. They could not get the blood draw for the labs, so they were finally able to draw blood from Mr. Spieler's ankle.

28.    The abdominal CT scan was performed on July 20, 2018.  The imaging revealed "Distended thick-walled colonic segments suspicious for colitis, inflammatory bowel disease or other large bowel infiltrative process.  Suggest colonoscopy for further evaluation if clinically appropriate."

29.    It is not known why Dr. Paulson ordered the CT as opposed to the colonoscopy as originally approved.   The medical chart does not show that Dr. Paulson or anyone else ever

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

ordered the colonoscopy as approved by the TLC committee and recommended by the doctor performing the CT scan.

30.    Meanwhile, Mr. Spieler continued to deteriorate.  Later in the day his heart rate was at 125, he was complaining of pain at a level of 7/10, 6-8 bloody diarrhea events a day, he was tachycardic, and his temperature had gone up to 101.8, a sure sign that he was fighting an infection.

31.    Because Mr. Spieler's condition was not being treated, he was continuing to lose weight and his vital signs were deteriorating.  On July 21, 2018 his blood pressure was 99/63, and his stool was the consistency of V8.

32.    By July 22, 2018, his weight was down about 20 lbs. to 156.8.

33.    He saw NP Mills again on July 23, 2018.  His blood pressure was only 99/65.  NP Mills writing is almost illegible, but one can discern that she met with Dr. Dewsnup who decided to start Mr. Spieler on prednisone while awaiting the approved colonoscopy.  Due to the illegible writing, it is not possible to figure out why Mr. Spieler could not get the colonoscopy.

34.    The labs that were completed on July 24, 2018 showed that his WBC was up to 13.7, that his other values were all worsening, and that his albumin level dropped to 2.1.  The labs were reviewed by NP Mills, and she notes that the WBC was at 11.7 on July 20, 2018.

35.    On July 27, 2018, his blood pressure was only 95/60, and his bloodwork results had not improved.

36.    On July 28, 2018 his SaO2 dropped to 89%, so he was finally sent to the hospital emergency room.  Normal SaO2 for a healthy adult is from 94% to 100%.  He also had a temperature of 100 degrees.

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

37.     He was admitted to Salem Hospital on July 29, 2018.  Upon arrival he had very abnormal labs, profound hypoalbuminemia (1.7), and was suffering from severe malnutrition.

38.     On July 30, 2018, Edward Schulteiss, MD performed a colonoscopy which revealed a diagnosis of chronic ulcerative colitis.

39.     Also on July 30, 2018, a stool sample was collected which tested positive for a Staphylococcus aureus (Staph) infection.  The results were available on August 1, 2018.

40.     Staph infections can be quite dangerous if not managed appropriately, and can lead to sepsis.

41.     Sepsis is an infection of the bloodstream. It's one of the most dangerous outcomes of Staph and can spread throughout your body, affecting the function of internal organs, and can cause death.

42.     Mr. Spieler stayed in Salem Hospital until August 2, 2018.  He was readmitted to the prison infirmary with a diagnosis of ulcerative colitis.

43.     Although Salem Hospital provided Mr. Spieler with ciprofloxacin and flagyl once he got there in case there was an infection, they did not mention the positive staph results in the discharge instructions, although they did provide the lab results showing the positive staph growth to the ODOC providers.

44.      It appears there was no follow-up testing to see if the staph infection had cleared.   In fact, it appears that no one read the records indicating that Mr. Spieler had suffered from a staph infection.

45.     It is apparent that Mr. Spieler continued to suffer from the staph infection, because he continued to decline in prison with no improvement in his ulcerative colitis.

FIRST AMENDED COMPLAINT            LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

46.     As will be seen in the subsequent paragraphs, even though Mr. Spieler's health was declining to a dangerous place, Dr. Paulsen and NP Mills kept returning Mr. Spieler to general population from the infirmary, and it is apparent they did not take Mr. Spieler's complaints seriously even though Mr. Spieler had diarrhea the consistency and color of V8 for at least two months, his weight was rapidly dropping, his vital signs were not improving, his labs results were showing a decline, and he was appearing acutely malnourished and ill.

47.     By August 3, 2018, Mr. Spieler's weight was down to 153 lbs. (a drop of 22 lbs. since his illness began), and his blood pressure was low at 102/64.

48.     On August 4, 2018 he was still complaining of loose stool, pain and cramping, and his blood pressure was down to 99/60.

49.     On August 6, 2018, he had lost another 13 lbs. and was down to 140 lbs. (a drop of 35 lbs. since his illness began).  He reported suffering from brown, watery diarrhea about 20 times a day.  Lab results drawn on August 4 were received on August 6 and showed no improvement in Mr. Spieler's condition, and in fact showed that Mr. Spieler was continuing to suffer from inflammation or infection, and was still very malnourished.  Yet even though Mr. Spieler was still extremely ill, Dr. Paulson discharged Mr. Spieler from the infirmary and sent him back to the General Population area of the prison where Mr. Spieler would have to fend for himself.

50.     On August 8, 2018, Mr. Spieler saw a nurse and complained "I'm not ready to go to GP." The nurse noted that Mr. Spieler was vomiting up clear fluid "since up here," and reported "diarrhea all the time."  His blood pressure was down to 92/51.

51.     Mr. Spieler saw NP Mills later in the same day.  NP Mill's writing is of course impossible to read, but it appears she observed he was suffering from tachycardia, which is a

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

common feature of sepsis.  She also noted fatigue and dehydration secondary to nausea, vomiting

and diarrhea.  She ordered IV fluids and follow-up in 6 days.

52.     Mr. Spieler went back to the infirmary after his appointment with NP Mills, but the nurse

was unable to start the IV after four unsuccessful attempts.  Another nurse tried two more times,

but was unable to succeed due to his "poor venous access has deteriorated to non-existent."

They gave him water and IV fluid to take orally.  He never got any IV fluids.

53.     The next morning the nurse noted his continued diarrhea, nausea, and blood pressure of

85/60. She spoke with NP Mills who sent him back to general population.  They let him finish

some Ensure before they kicked him out of the infirmary.  He never received the IV fluids.

54.     Mr. Spieler did not last long in general population.  The infirmary was called from the

dining hall on August 11, 2018 where Mr. Spieler was vomiting.  He was admitted to the

infirmary stating that he had diarrhea 20 times a day, abdominal pain of 9/10, fever and

tachycardia.  His blood pressure was down to 89/54, his weight down to 135 lbs (total weight

loss of 40 lbs), pulse was elevated to 103, and his fever was 99 degrees.  They gave him Tylenol,

Zofran, and pushed fluids.

55.     Mr. Speiler was seen by Dr. Paulson on August 13, 2018.  Mr. Spieler expressed that he

wanted to stay in the infirmary.  As is typical, his progress notes are next to impossible to read,

but it appears that Dr. Paulsen thinks that Mr. Spieler has some sort of "[second] agenda," i.e.,

that he was faking his symptoms.  So, he sent Mr. Spieler back to general population with a

slight fever, elevated pulse, low blood pressure, a pain level of 8/10, severe weight loss,

cramping, diarrhea, nausea, and a weight loss of 40 lbs.

56.     The progress notes indicate that someone brought Mr. Spieler back to the infirmary the

Page 10          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

next day by wheelchair. But the notes indicate he was back in his cell a few hours later.

57.    On August 15, 2018, his blood pressure was only 96/46, his O2Sat was down to 95%, and his pulse was elevated to 125. He had his blood drawn. The report, which was received later that day, showed no improvement.

58.    It appears that since he was being ignored, Mr. Spieler tried to tough it out in GP for the next eight days, for there are no progress notes until August 23, 2018.

59.    On August 23, 2018, Mr. Spieler was seen by NP Mills, whose progress notes are unreadable. He had been seen by a Physician's Assistant at Salem Gastroentarology Consultants on August 17, 2018, who recommended initiation of HUMIRA and prednisone, and updated labs including sedimentation rate.

60.    There is no order in the chart for prednisone, but it looks like the TLC committee approved mesalamine.

61.    On August 27, 2018, Mr. Spieler reported to a nurse he was incontinent.

62.    He saw NP Mills on August 29, 2018. She notes that he is not responding to the mesalamine, and that he has 20-25 bowel movements a day. She also describes him as frail, but otherwise does nothing for him.

63.    By the end of August, 2018, Mr. Spieler was using diapers because his inability to control his bowels.

64.    On September 1, 2018, he only weighed 126 lbs (a weight loss of about 50 lbs).

65.    On September 4, 2018, a Sergeant returned Mr. Spieler to the infirmary and yelled at a nurse to do something about him. The nurse was annoyed that a Sergeant was yelling at her, and at first was rude to Mr. Spieler. Mr. Spieler broke down and started to cry due to his massive

Page 11        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

pain, emaciated state, incontinence of his bowels, constant diarrhea, weakness, elevated heart

rate, and generally feeling that he was dying.  The Nurse took his blood pressure and other vitals.

Realizing that Mr. Spieler was gravely ill, she told Mr. Spieler that she could send him to the

hospital, but he had to tell the hospital he is suffering chest pain.  She noted in the records that

Mr. Spieler had chest pains (in addition to his vital signs) and relayed this information to Nurse

Practitioner Heidi Miller, who ordered Mr. Spieler to the hospital via ambulance.   This nurse

probably saved Mr. Spieler's life.

66.     Nursing staff have nursing protocols which guide them as to how to handle many medical

issues.  Upon information and belief, it is presumed that this nurse knew, and that protocols

dictated, that chest pains required an immediate trip to the emergency room.

67.      Mr. Spieler's weight at the time of admission to Salem Hospital was only 125 lbs (a drop

of 50 lbs in about 3 months).

68.     Mr. Spieler was admitted to Salem Hospital on September 4, 2018.

69.     Once a prisoner spends more than 24 hours in the hospital, then neither ODOC or CHP

are liable for the medical bills.  In fact, the CHP contract with ODOC requires CHP to deny the

claim, and to direct the Provider to the appropriate entity for repayment.  Yet, even though

ODOC and CHP no longer have financial liability for the medical bills, the CHP contract

requires CHP to continue its involvement with the patient/prisoner's care.  It therefore has

implemented (as required by contract), policies and procedures regarding case management.  In

this particular case, CHP inserted a case manager to meddle with Mr. Spieler's care.

70.     It is worth noting that even though a patient is hospitalized and ODOC and CHP are no

longer liable for the medical bills, ODOC is continuing to incur expense in having correctional

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

officers guard the patient 24/7 at the hospital.

71.    On September 6, 2018, the CHP case manager Kamaria called the Salem Hospital care manager.  The phone notes indicate there was a "Plan A" which was to discharge Mr. Spieler back to OSP in 7-10 days.  There is no mention of a Plan B.  There is no indication there was a discussion of Mr. Spieler's needs, diagnoses, or prognosis.

72.    On September 6, 2018, Mr. Spieler's labs were all very abnormal and consistent with the labs done by ODOC.   Some of the lab results were:  WBC 12.0(H), RBC 2.93(L), HCT 23.9(L), RDWCV 16.9(H), ALB 1.7(L), and TPRO 5.4(L).

73.    His initial diagnosis was acute ulcerative colitis, candida esophagitis (thrush), severe malnutrition, acute blood loss anemia, paroxysmal A-fib, lung nodules and cholelithiasis.  He required several blood transfusions.

74.    Even though the differential diagnosis included sepsis, and even though Mr. Spieler had tested positive for a Staph infection on his prior hospital stay, no one at the hospital ordered appropriate tests to rule out sepsis.

75.    On September 12, 2018, his WBC was up to 31.7, much higher than the day before where it was 20.7.

76.    On September 13, 2018, the hospital progress notes indicate that he was suffering from "bilateral leg swelling with muscle wasting."

77.    Mr. Spieler spent ten days at the hospital, and his condition worsened.  Consistent with "Plan A" described in paragraph 70 above, Salem Hospital discharged Mr. Spieler back to the prison on September 15, 2018.  At the time of discharge, many of his lab results had shown no substantial improvement, and some were worse than his admission lab results.  For example, his

Page 13          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

WBC went up to 34.1, and his albumin level was still down at 1.8.  His Discharge Summary included the "Hospital Problem List" which listed the following issues with Mr. Spieler: "Principal:  Ulcerative colitis, universal, Anorexia, Abnormal weight loss, Failure to thrive, Esophageal dysphagia, Blood loss anemia, Thrush of mouth and esophagus and Diarrhea."

78.    On the morning of September 16, 2018, Mr. Spieler declined even further.  The ODOC nurse took many blood pressure readings, with the lowest down to 72/42.  He had an elevated heart rate at 125, and SaO2 at 90%.  He was sent back to Salem Hospital.

79.    In the evening of September 16, 2018, his labs revealed he was still suffering from a staph infection and a bacterium called klebsiella aerogenes (which is resistant to penicillin). According to the CDC, *Klebsiella* bacteria are normally found in the human intestines (where they do not cause disease). They are also found in human stool (feces).  These lab tests confirmed that Mr. Spieler was suffering from sepsis and septic shock.

80.    On September 17, 2018, he met with Dr. Clarke for a surgical consultation.  Her notes describe Mr. Spieler as follows:  "He appears cachectic.  He appears toxic.  He has a sickly appearance.  He appears distressed."  She further describes his temporal wasting, protruding clavicles, and loss of subcutaneous fat.  She described Mr. Speiler's relevant active problems as follows:  Perforated bowel, Sepsis, Ulcerative colitis, Severe protein-calorie malnutrition, and Anemia.  She indicates that the severe protein-calorie malnutrition "Complicates all aspects of care."  She discussed the options with Mr. Spieler, recommending proceeding urgently to the OR for exploratory laparotomy and she anticipated the need for a colostomy.  She explained the risks and further explained the alternative to the proposed procedure which was:  "Declining surgery which carries high likelihood of death within hours to days."  Mr. Spieler gave consent to

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

proceed.

81.    For some reason, there is no operative report in the Salem Hospital medical records that were provided to plaintiff's counsel pursuant to a medical records request.  Nor is an operative report in the ODOC medical file.  Records from subsequent days indicate that he had gangrenous pan-colitis with perforation.  He suffered acute respiratory failure following surgery, and remained intubated in the ICU.

82.    Mr. Spieler met with a registered dietician on September 18, 2018 whose shocking description of Mr. Spieler was as follows:

> "The patient meets criteria for severe malnutrition associated with chronic illness evidenced by weight loss 7% x 2 months.  Other clinical indicators include overt muscle wasting evidence by severe temporal wasting and moderately protruding scapula, moderate wasting of deltoid, severe thigh wasting and loss of subcutaneous fat evidence by moderately diminished orbital fat pads."

83.    On September 19, 2019 he had an additional surgery for a feeding tube placement, and ileostomy (a surgical operation in which a piece of the ileum is diverted to an artificial opening in the abdominal wall).

84.    He spent approximately ten days in an ICU, and was released back to the OSP infirmary on October 5, 2018.

85.    In addition to suffering a bowel perforation due to ulcerative colitis with resulting gangrene, sepsis and severe malnutrition, he also suffered a left femoral DVT, right upper extremity DVT, chronic dysphagia (inability to swallow), lung lesions due to septic emboli, candidal esophagitis (thrush), hyponatremia (decrease in serum sodium concentration), and severe deconditioning.

86.    The Discharge Summary indicated that Mr. Spieler needed physical and occupational

Page 15         FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

therapy, and that he was not "really safe for the infirmary at the correctional facility at this point in my opinion." The writer also stated that Mr. Spieler would benefit from IPR or VIBRA stay (inpatient rehabilitation facilities) for rehab. She also expressed concern about a back wound progressing due to pressure. She apparently spoke with a correctional officer and discussed her concerns. "He states they are able to care for his need at the correctional facility and decline admission to rehab facility as I have recommended."

87.     Again, it is important to note that under Oregon Administrative Rules, neither ODOC or CHP are financially liable for inpatient care at a rehabilitation facility once the stay exceeds 24 hours. But ODOC would be required to have a correctional officer with the patient at all times which may have been the motivating factor in the denial of inpatient rehabilitation.

88.     Mr. Spieler was released back to prison. He did not receive any occupational or physical therapy, thus exacerbating his medical condition and prolonging his road to recovery.

89.     According to ODOC records, Mr. Spieler weighed only 119.5 lbs. on October 5, 2018. His weight dropped further to 116.6 lbs. the following day. He then very slowly began to put weight back on, but was still down about 50 lbs a month later.

90.     Due to the lack of physical therapy, Mr. Spieler's recovery was prolonged. Although Dr. Paulson took the PT request to the TLC for approval of three sessions, the records do not indicate when or if he received the PT. As of October 30, 2018, he still had not received any PT.

91.     He was discharged back to general population on November 5, 2018.

Mr. Spieler is much better today, but he requires the use of a colostomy bag to catch is waste for the rest of his life.

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

## FIRST CLAIM FOR RELIEF

### (Civil Rights 42 USC § 1983 against Defendants Paulson, Harris, and Mills)

92.     Plaintiff realleges paragraphs 1-91.

93.     Defendants Paulson, Harris and Mills were deliberately indifferent to Mr. Spieler's serious medical needs in the following manner:

a.      In failing to refer Mr. Spieler out for the TLC approved colonoscopy in a timely manner;

b.      In allowing Mr. Spieler to become so malnourished and cachectic that it complicated his ulcerative colitis and endangered his life;

c.      In allowing Mr. Spieler to languish for extended periods of time without appropriate treatment, hydration and nourishment leading up to both his July 28, 2018 and his September 4, 2018 hospitalizations;

d.      In failing to seek outside medical care much earlier than they did in the periods of time leading up to both his July 28, 2018 and September 4, 2018 hospitalizations;

e.      In allowing Mr. Spieler to suffer from severe, non-stop, bloody diarrhea for many months with no meaningful treatment;

f.      In failing to read the medical records indicating he had suffered from a staph infection;

g.      In failing to follow-up with appropriate testing to see if his staph infection had cleared;

h.      In failing to take Mr. Spieler's numerous complaints of bloody diarrhea, pain, and inability to eat seriously;

Page 17        FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

i.      In failing to acknowledge his obvious state of cachexia;

j.      In constantly ignoring his complaints and sending him back to general population when he was in need of hydration, nourishment, pain relief and emergent medical care;

k.      In failing to provide appropriate rehabilitation therapy; and

l.      In failing to provide constitutionally adequate treatment for his ulcerative colitis and resulting complications;

94.     As a result of the practitioners' deliberate indifference, they violated Mr. Spieler's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

95.     As a result of the practitioners' violation of Mr. Spieler's Constitutional rights, Mr. Spieler incurred over $300,000 in medical bills, he will incur future medical expenses in order to maintain his colostomy for the rest of his life, and he suffered unbearable pain and a very real fear of death. Accordingly, plaintiff is entitled to economic, non-economic and punitive damages against defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983, and for plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**

**(Civil Rights 42 USC § 1983 against Defendants CHP and Salem Hospital)**

96.     Plaintiff realleges paragraphs 1-91.

97.     Upon information and belief, Salem Hospital is a contracted Preferred Provider for CHP.

98.     As evidenced by paragraphs 70 and 85-87 above, Salem Hospital has a policy, procedure or practice where it allows ODOC or CHP employees to direct the medical care or discharge

Page 18       FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

conditions of prisoners that are not in the best interest of the prisoner patient.

99.     Per its contract, CHP has established, implemented and maintains written Case

Management policies, procedures and practices.  Pursuant to these policies and procedures, CHP

inserts a case manager to meddle in a patient's care, and influence discharge planning and

ancillary services that may not be in the patient's best interest as evidenced by "Plan A" as

alleged in paragraph 70, and lack of rehabilitation therapy as alleged paragraphs 85-87.

100.    Salem Hospital was deliberately indifferent to the serious medical needs of Mr. Spieler in

the following particulars:

      a.      In releasing Mr. Spieler from Salem Hospital on September 15, 2018 according to

      Plan A (as alleged in paragraph 71), even though his health was continuing to decline,

      there was a differential diagnosis of sepsis, and his lab results showed that he had a

      serious infection, severe malnutrition, and continuing severe ulcerative colitis; and

      b.      In allowing ODOC or CHP to direct that Mr. Spieler be released to the OSP

      infirmary on October 5, 2018, as opposed to a rehabilitation facility that would provide

      the therapy and ongoing care that he needed.

101.    CHP was deliberately indifferent to the serious medical needs of Mr. Spieler in the

following particulars:

      a.      In implementing Plan A and dictating or influencing the premature discharge of

      Mr. Spieler from the hospital on September 15, 2018 when his condition was worsening;

      b.      In influencing or dictating the discharge of Mr. Spieler from the hospital on

      October 5, 2018 without an appropriate plan for rehabilitation therapy.

102.    CHP and Salem Hospital's deliberate indifference violated Mr. Spieler's right to be free

FIRST AMENDED COMPLAINT                    LYNN S. WALSH
                                                                OSB# 924955
                                                                610 SW Alder St., #415
                                                                Portland, OR 97205
                                                                503-790-2772
                                                                walsh@europa.com

from cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

103.    As a result of CHP and Salem Hospital's violations of Mr. Spieler's Constitutional rights, Mr. Spieler experienced continued suffering, a worsening of his condition, and a prolonged recovery.  Accordingly, plaintiff is entitled to economic, non-economic and punitive damages against defendants in an amount to be determined at trial for the violations of 42 U.S.C § 1983, and for plaintiff's attorney fees and costs pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF

### (Negligence against Salem Hospital)

104.    Plaintiff realleges paragraphs 1-91 and 97-103.

105.    Defendant Salem Hospital, as the employer of Mr. Spieler's medical team, including doctors, nurses and other care providers, is vicariously liable for the acts and omissions of each and every provider who cared for Mr. Spieler at Salem Hospital.

106.    The negligence of Salem Hospital from September 4, 2018 forward was a substantial factor in causing or contributing to Mr. Spieler's injuries as described in the preceding paragraphs which include:

      a.      Prolonged pain and suffering;

      b.      Near death;

      c.      A gangrenous colon;

      d.      Sepsis;

      e.      Septic shock;

      f.      Several surgeries;

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

g.      The need for a colostomy bag;

h.      A prolonged recovery time.

107.    Defendant Salem Hospital was negligent in one or more of the following particulars:

a.      In failing to follow up with appropriate testing for infections;

b.      In failing to diagnose sepsis;

c.      In discharging Mr. Spieler from the hospital on September 15, 2018 when he was

still acutely ill; and

d.      In failing to discharge Mr. Spieler to an appropriate care facility on October 5,

2018.

108.    Salem Hospital's agents and employees violated their duty to use that degree of care, skill

and diligence that is used by ordinarily careful medical providers in the same or similar

circumstances in the community or similar community.

109.    As a direct and proximate result of Salem Hospital's acts or omissions, plaintiff has

incurred additional medical bills and noneconomic damages in an amount to be determined at

trial.

## FOURTH CLAIM FOR RELIEF

### (Negligence against State of Oregon)

110.    Plaintiff realleges paragraphs 1-91.

111.    The Oregon Department of Corrections is an agency of the State of Oregon.

112.    The agents and employees of the Oregon Department of Corrections were acting within

the scope of their agency or employment.

113.    The Oregon Department of Corrections has a duty to provide medical care to its residents

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

that is consistent with the standard of care doctors provide to those who are not incarcerated.

114.    Plaintiff gave defendant a Tort Claim Notice as required by ORS 30.275(2) on or about April 23, 2019.  This notice was timely because of Plaintiff's inability to give notice sooner because of his illness and incapacity, and because ODOC and/or its agents concealed, or otherwise failed to reveal, the reasons behind why Mr. Spieler was required to undergo a colostomy.   Specifically, he was never told of the infection, gangrenous colon, lab results or his low albumin levels and what all that meant until he was told of the contents of his medical records sometime in December 2018.

115.    In the alternative, the tort claim notice was timely because of:

a.       ODOC's administrative rule that extinguishes a prisoner's federal claims if he files a notice of tort before exhausting his administrative remedies;

b.       Due to Mr. Spieler's illness and incapacity, and ODOC's failure to comply with its own grievance procedure deadlines, he could not complete the grievance procedure before the expiration of 180 days;

c.       Thus the notice provision was not triggered until the grievance procedure was complete; and

d.       Equitable estoppel tolls the Oregon Tort Claims Act notice clock.

116.    Defendant ODOC, by and through the conduct of its agents and employees, were negligent in the following particulars:

a.       In failing to provide any medically acceptable medical treatment for plaintiff's colitis;

b.       In failing to monitor whether Mr. Spieler's staph infection had resolved;

c.       In failing to ensure that Mr. Spieler received adequate nutrition and fluids; and

Page 22          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

d.       In allowing Mr. Spieler's condition to deteriorate to the point that he suffered gangrene and a perforated bowel, requiring that his colon be removed and replaced with a colostomy bag on or about September 17, 2018.

117.    Defendant's agents and employees violated their duty to use that degree of care, skill and diligence that is used by ordinarily careful medical providers in the same or similar circumstances in the community or similar community.

118.    In the alternative, Defendant's agents and employees knew or in the exercise of reasonable care should have known their acts and omissions as set forth herein would result in a foreseeable risk of injury to plaintiff.

119.    Defendant's agents and employees' conduct was unreasonable in light of the risk of harm to plaintiff.

120.    As a direct and proximate result of the defendants' acts or omissions, plaintiff has incurred economic damages in the amount of $305,000 and noneconomic damages in the amount of $670,000.

        WHEREFORE, plaintiff prays for relief as follows:

        a.  For judgment in favor of plaintiff against defendants for his economic and non-economic damages;

        b.  For reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988; and

        c.  For such other and further relief as may appear just and appropriate.

        DATED:   November 9, 2020.

                        /s/ Lynn S. Walsh
                        Lynn S. Walsh, OSB #92495

Page 23          FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com

(503)790-2772
Attorney for plaintiff

FIRST AMENDED COMPLAINT

LYNN S. WALSH
OSB# 924955
610 SW Alder St., #415
Portland, OR 97205
503-790-2772
walsh@europa.com